FILED & JUDGMENT ENTERED
Steven T. Salata

August 13 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In re:                                )
                                      )
**GABBIDON BUILDERS LLC,**            )    Chapter 7
                                      )    Case No. 20-30845
            Debtor.                   )
_____)

## ORDER DENYING FEE APPLICATION IN PART AND GRANTING FEE APPLICATION IN PART

**THIS MATTER** is before the court on counsel for the Debtor's Interim Report and Application of Attorney Robert Lewis, Jr., for Compensation and Reimbursement of Expenses as Attorney for the Debtor in Possession (the "Fee Application") and the Bankruptcy Administrator's (I) Response to First Interim Fee Applications and (II) Motion to (A) Sanction Debtor's Attorney or (B) Require Repayment Pursuant to 11 U.S.C. § 329(b) (the "Response"). In the Fee Application, Debtor's counsel seeks attorney's fees and expenses in the total amount of $15,068.75. The Debtor's counsel seeks the $15,068.75 in addition to a $10,000 retainer that he received before the Debtor filed for bankruptcy. The Response requests that the court deny the Fee

Application and sanction counsel for the Debtor by requiring disgorgement of his $10,000 retainer. For the reasons set forth below, the court denies the Fee Application to the extent of the $10,000 retainer that Debtor's counsel received pre-petition and allows counsel for the Debtor to receive the balance of the fees and expenses sought in the amount of $5,068.75.

**Facts and Procedural Background**

The Debtor filed a Chapter 11 bankruptcy petition on September 19, 2020 and elected to proceed under Subchapter V. The Debtor's Application for Employment of Attorney (the "Application to Employ") filed on October 1, 2020 states that it discloses the compensation paid to its attorney, Robert Lewis, Jr. ("Lewis"), in an attached affidavit. In the attached affidavit, which is notarized, Lewis attests that he had no business with any creditor or other party in interest in connection with the Chapter 11 estate at any time, but it does not disclose any compensation paid to Lewis. The Debtor then filed its initial Statement of Financial Affairs (the "SOFA") on October 5, 2020 stating that prior to filing for bankruptcy, the Debtor's principal, Leonard Gabbidon ("Gabbidon"), paid Lewis $11,717 to cover Lewis's $10,000 retainer and the $1,717 Chapter 11 filing fee. With the SOFA, Lewis contemporaneously filed a Disclosure of Compensation of Attorney for Debtor(s) (the "Disclosure"). In the Disclosure, Lewis notes that the source of his compensation was the Debtor. The Debtor subsequently

2

filed an Amended Application for Employment of Attorney (the "Amended Application") on October 16, 2020, which tells the same story as the SOFA—prior to filing the bankruptcy, the Debtor paid Lewis $1,717 for the Chapter 11 filing fee and $10,000 as a retainer for Lewis. The Amended Application reiterates that Lewis had no business with any creditor or other party in interest in connection with the Chapter 11 estate at any time. On February 1, 2021, Lewis filed the Fee Application seeking compensation for services rendered and reimbursement of expenses in the total amount of $15,068.75 and noticed the Fee Application for hearing on February 24. Up to this point, the court and the other parties in interest had no reason to suspect there was anything wrong with the Fee Application, the Disclosure, or any other filings with the court.

This all changed starting with a deposition of Gabbidon (the "2004 Examination") conducted on February 22, 2021 pursuant to the Order Allowing Ex Parte Motion for Examination of Gabbidon Builders, LLC and for Production of Documents under Rule 2004 of the Federal Rules of Bankruptcy Procedure. During the 2004 Examination, Gabbidon testified that the source of the $11,717 payment to Lewis was a loan made by an individual named Deepak Jain ("Jain"). The next day, the Debtor amended its Schedule E/F to add a $20,000 liability to Jain; however, Lewis did not immediately amend the Disclosure or any other document filed with the court to show that the source of his retainer and

3

the filing fee was Jain's loan. This led the Bankruptcy Administrator to orally move at the February 24, 2021 hearing for an extension of time to object to the Fee Application and to file an ex parte motion for the production of documents pursuant to Rule 2004. The court entered an order granting the Bankruptcy Administrator's ex parte motion on March 1, 2021. Afterwards, Lewis did file a Disclosure of Compensation of Attorney for Debtor(s)—Amended (the "First Amended Disclosure") on March 2, 2021, which states that Lewis agreed to accept $30,000 for legal services, and, prior to filing the First Amended Disclosure, he received $10,000 plus an additional $1,717 for the filing fee. Notably, the First Amended Disclosure still incorrectly indicates that the source of the compensation to Lewis was the Debtor and not the loan from Jain. Thereafter, on March 19, 2021, the Bankruptcy Administrator filed the Response seeking an order denying the Fee Application and requesting that the court sanction Lewis by requiring disgorgement of the $10,000 retainer. In an email from the Bankruptcy Administrator to Lewis dated March 22, 2021, the Bankruptcy Administrator informed Lewis that she saw no choice but to file the Response given that she asked Lewis to file an amended 2016 statement a week prior to accurately reflect the source of his fees, and he had not.[1]

On March 27, 2021, over a month after the Bankruptcy

---

[1] The email is attached as Exhibit A to the Declaration of Robert Lewis, Jr filed on May 4, 2021.

4

Administrator initially discovered the true source of Lewis's retainer, Lewis filed yet another Disclosure of Compensation of Attorney for Debtor(s)—Amended (the "Second Amended Disclosure") showing that the Debtor paid Lewis's $10,000 retainer and the filing fee using money borrowed from Jain. It further notes that the Debtor paid Lewis using a cashier's check from the checking account of Deepak Jain. The cashier's check, which was introduced into evidence by the Bankruptcy Administrator, lists Deepak Jain as the remitter of the funds. The Second Amended Disclosure is the first time throughout these proceedings that Lewis disclosed Jain's loan as the source of the funds used to pay his retainer and the filing fee. Next, just before the April 23, 2021 continued hearing on the Fee Application, Lewis filed the Attorney's Amended Declaration (the "Amended Declaration") on April 22. Interestingly, Lewis notes in the Amended Declaration that upon the filing of the Chapter 11 petition, Lewis learned that Gabbidon had obtained a loan from Jain in the amount of $15,000 and agreed to pay Jain $20,000 at a later date to satisfy the loan. In the very next sentence of the Amended Declaration, however, Lewis attests that he subsequently learned that Gabbidon utilized the loan proceeds received from Jain to pay Lewis's retainer and the filing fee. Lewis does not provide the exact time when he "subsequently" learned this information.

The court continued the April 23 hearing on the Fee

Application to April 30, 2021, and, on the day of the hearing, the Debtor filed a reply to the Response (the "Debtor's Reply"), which muddled the waters even further. In the Debtor's Reply, the Debtor contends that Gabbidon dropped off a check to Lewis the day before the Debtor filed for bankruptcy. Gabbidon mentioned to Lewis that he borrowed the money to pay the initial retainer but did not elaborate any further regarding who he borrowed the money from, and, since Gabbidon is the sole owner of the Debtor, Lewis presumed that Gabbidon borrowed the money personally and was making a voluntary capital infusion. According to the Debtor's Reply, Lewis did not learn that the cashier's check was a loan from Jain to the Debtor until Gabbidon's testimony.

The next hearing did little to clear things up. At the April 30 continued hearing on the Fee Application, Gabbidon testified that he did not tell Lewis that he borrowed money from Jain to pay Lewis's retainer and the filing fee. Moreover, Lewis said at the hearing that he did not learn Jain loaned the Debtor money until Gabbidon's testimony at his 2004 Examination. The court asked Lewis why he did not properly disclose this information until over a month after he allegedly discovered it, and Lewis said he was not sure but also admitted that he needed to get the facts straight with his client. The court further asked Lewis why he did not examine the cashier's check and notice that it was remitted from Jain's account, not the

6

Debtor's. Lewis responded by first questioning whether he was required to examine the check, then he admitted that he just missed it because the writing on the check was small, and he was not wearing his glasses at the time. The court decided to take the matter under advisement.

Following the hearing, on May 4, 2021, Lewis filed one final Declaration of Robert Lewis, Jr (the "Second Declaration"). In the Second Declaration, Lewis asserts that he was not aware of Gabbidon receiving a loan from Jain when he submitted his Amended Application. This is a contradictory statement, as the Debtor's Reply notes that Gabbidon mentioned borrowing money when he dropped off the cashier's check. Similarly, in the Amended Declaration, Lewis acknowledges that Gabbidon told him about the loan from Jain upon the filing of the petition. Furthermore, Lewis contends in the Second Declaration that he promptly amended the schedules, attorney disclosure statement, and affidavit to employ based upon his communication with the Bankruptcy Administrator. Lewis did amend the schedules to indicate that Jain is a creditor in the case, but Lewis did not properly amend either the affidavit to employ or the attorney disclosure statement until over a month after the Bankruptcy Administrator first discovered the existence of the money borrowed from Jain. In addition, Lewis still has not properly amended the SOFA filed on October 5,

2020.[2] As a result, Lewis's statement that he promptly amended all the necessary filings is simply not true.

## Discussion

The Bankruptcy Code requires attorneys seeking approval for employment as counsel for a debtor to not "hold or represent an interest adverse to the estate." 11 U.S.C § 327(a). To enable courts to determine whether attorneys comply with § 327(a), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure sets forth requirements for applications for employment. This includes disclosing any proposed arrangement for compensation and all the attorney's connections with the debtor, creditors, and any other party in interest. In addition, the rule requires the application to be accompanied by a verified statement of the attorney setting forth any connections with the debtor, creditors, or any other party in interest. Fed. R. Bankr. 2014(a).

> Full disclosure in an application to employ and its accompanying affidavit is necessary for parties-in-interest, creditors, and the Court to make an assessment as to the possibility of conflicts of interest and whether or not an attorney holds an interest adverse to the estate. Without full disclosure, no one is able to make an accurate assessment of counsel's ability to be or remain disinterested.

In re Miracle Christian Int'l Life Ctr., No. 08-03474-8-RDD, 2008 WL 5145392, at *1 (Bankr. E.D.N.C. Dec. 5, 2008). A fee

---

[2] The Debtor did amend the SOFA on November 5, 2020, and then again on December 17, 2020, but the Debtor never amended the SOFA to disclose the nature of Lewis's compensation.

8

applicant must disclose the "precise nature of the fee arrangement" and disclose any "potential for a conflict of interest." See In re Glenn Elec. Sales Corp., 99 B.R. 596, 600 (D.N.J. 1988).

The consequences for violating the disclosure rules can be severe. Violations of the disclosure requirements imposed by the Code "are sufficient to support denial of compensation, regardless of whether the omissions are materially adverse to the interests of the debtor's bankruptcy estate." In re Tosh, No. 12-03300-8-JRL, 2013 WL 2500849, at *3 (Bankr. E.D.N.C. June 11, 2013) (citations omitted); see also Miracle Christian, 2008 WL 5145392, at *2 ("A violation of the disclosure rules alone suffices to support partial denial of compensation, regardless of whether an undisclosed fee arrangement is in fact materially adverse to the estate's interest." (citing In re CF Holding Corp., 164 B.R. 799 (Bankr. D. Conn. 1994))). Total denial of compensation can include disgorgement of a retainer where the proposed counsel of the debtor failed to disclose connections with the source of the funds to pay the retainer. See In re Crimson Invs., N.V., 109 B.R. 397, 401 (Bankr. D. Ariz. 1989) ("The only remedy is to direct the immediate turnover of the entire retainer to this Court as property of the estate for the benefit of the Debtor in this Chapter 11 proceeding."). "Certain courts have even held that an attorney—who had accepted a retainer from a non-debtor third party—was disqualified from

9

representing a debtor." In re Mo. Mining, Inc., 186 B.R. 946, 948 (1995).[3] Finally, sanctions for violating the disclosure rules may be imposed even if the failure to disclose is negligent or inadvertent. In re Aleman, Nos. 05-35707, 2006 WL 7122391, at *4 (Bankr. W.D.N.C. Mar. 1, 2006) (citing Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 882 (9th Cir. 1995)).

In this case, it is clear that on September 18, 2020, Lewis accepted a cashier's check from the account of an individual named Deepak Jain in the amount of $11,717 and used the funds to pay his $10,000 retainer and the $1,717 Chapter 11 filing fee. Jain loaned these funds to the Debtor, the Debtor neither disclosed nor scheduled the existence of this loan until after Gabbidon's testimony regarding the retainer payment during the 2004 Examination, and Lewis acknowledged the loan as the source of the funds used to pay his retainer for the first time in the Second Amended Disclosure. Beyond these facts, it is hard to decipher what, if anything, Lewis knew about who paid his retainer based on the inconsistent filings, declarations,

---

[3] The Bankruptcy Administrator asserts that there is one case, In re Huntmar Beaumeade I Ltd. P'ship, 127 B.R. 363, 365 (Bankr. E.D. Va. 1991), in which a court held that payment of a retainer by a third party is disqualifying per se. In a later case, the same court rejected the use of per se rules, "favoring instead a fact-intensive inquiry into the situation presented." In re Palumbo Family Ltd. P'ship, 182 B.R. 447, 466 (Bankr. E.D. Va. 1995) (citing Harold & Williams Dev. Co. v. U.S. Trustee (In re Harold & Williams Dev. Co.), 977 F.2d 906, 909-10 (4th Cir. 1992)). This court declines to adopt a per se rule and instead relies on Fourth Circuit precedent, which confines the use of per se rules to those situations specifically set out in the Bankruptcy Code's definition of a "disinterested person." See Harold & Williams Dev. Co., 977 F.2d at 909-10.

10

testimony, and argument. It is also difficult to determine whether Lewis purposefully tried to mislead the court. The court would like to think not but is unsure given Lewis's contradictory statements and pattern of inattentive conduct. Regardless, even if Lewis was merely negligent, failure to disclose Jain's loan at the beginning of the case is sufficient justification to impose sanctions against Lewis.

What is particularly troubling to the court is that Lewis has previously found himself in a similar situation. In Tosh, the court denied substantial compensation to Lewis for his failure to file an application for employment until approximately one year after the petition date. Tosh, 2013 WL 2500849, at *2. In reaching this conclusion, Judge Leonard observed that the application for employment was "patently inaccurate and riddled with inconsistent statements." Id. Lewis's actions are similar in this case. As in Tosh, Lewis filed several inconsistent declarations and documents. In addition, at the hearing on the Fee Application, Lewis failed to provide any clear explanation as to why he did not disclose the loan from Jain immediately after the Bankruptcy Administrator discovered the true source of his compensation. In Tosh, Lewis similarly failed to satisfactorily explain his behavior to Judge Leonard. See Id.

Given the nature of emergency bankruptcy filings, it is understandable that there may be mistakes in disclosing all

relevant facts at the inception of a case; however, upon learning of these mistakes, it is imperative that attorneys take immediate action to properly amend filings in a case and correct any inaccuracies in order to protect the integrity of the bankruptcy system.  In the instant case, Lewis failed to take the immediate necessary steps to correct his mistake.  As is evidenced by the email exchange between the Bankruptcy Administrator and Lewis, the Bankruptcy Administrator practically begged Lewis to make the proper disclosures so she could avoid taking the unpleasant step of filing a motion for sanctions.  For whatever reason, Lewis dragged his feet and did not file the Second Amended Disclosure revealing the true source of his retainer until March 27, 2021, over one month after the Bankruptcy Administrator found out about the loan.  As of the entry of this order, the Debtor still has not properly amended the SOFA to disclose the true nature of Lewis's fee arrangement.

In light of these facts and Lewis's failure to properly disclose the loan from Jain and the source of his retainer, the court concludes it is appropriate to deny Lewis's application to the extent of the $10,000 retainer he received from Jain.  Accordingly, the court hereby **DENIES THE FEE APPLICATION IN PART AND ALLOWS THE BALANCE OF THE FEES AND EXPENSES IN THE AMOUNT OF $5,068.75.**  In the Response, the Bankruptcy Administrator also sought a future hearing on Lewis's ability to continue representing the Debtor to the extent the Trustee's Motion to

Convert or Dismiss Case was denied or continued. The court subsequently granted the Trustee's motion and entered an order converting this case to a Chapter 7 on May 14, 2021. To the extent that the issue regarding Lewis's disqualification is not moot, the parties can seek that relief in a new motion.

**SO ORDERED.**

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |